AO 91 (Rev. 01/09) Criminal Complaint                                                   AUSA Shaniek Maynard

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| ELLIOTE HANDY, ) | Case No. 11-8226-AEV |
| ) | |
| _____ ) | |
| Defendant | |

FILED by _____ D.C.

JUN 1 6 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of __July 30, 2008__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant violated __18__ U. S. C. § __1951(a)__, an offense described as follows:

Attempted Hobbs Act robbery and possession of a firearm in furtherance of a federal crime of violence, in violation of 18 U.S.C. §§ 1951(a) and 924(c)(1).

This criminal complaint is based on these facts:

### SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent John J. MacVeigh, IV, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   07/16/2010

_____
Judge's signature

City and state:   West Palm Beach

ANN E. VITUNAC, UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

I, John J. MacVeigh, IV, being duly sworn, do state and attest as follows:

1. I am employed as a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since October 29, 1995. I am currently assigned to the Palm Beach County, Florida, resident agency of the FBI.

2. This affidavit is presented in support of an arrest warrant for the arrest of ELLIOTE HANDY. This affidavit is based on your affiant's personal investigation and on information from other law enforcement officers and witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain each and every detail about this investigation of which I am aware. This affidavit supports the arrest of HANDY for his participation in the commission of a criminal offense, namely, a Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a); and possession of a firearm in furtherance of a federal crime of violence, in violation of Title 18, United States Code, Section 924 (c) (1). Elliote HANDY is a black male born in the year 1986.

3. On July 30, 2008, at approximately 9:56 A.M., a representative from the Wachovia Bank located at 4900 Okeechobee Boulevard, West Palm Beach, Florida, in the Southern District of Florida, reported an armed robbery of the Loomis armored vehicle to the Palm Beach County Sheriff's Office (PBSO). The Loomis company is a business headquartered in Irving, Texas. The Loomis company collects, transports and distributes money and other services to businesses that engage in interstate commerce.

4. The Loomis armed security guard (messenger) was servicing the automated teller machine (ATM) located in the drive-thru of the Wachovia Bank. One of

the armed security guards waited inside the armored vehicle in the driver's seat. The messenger was standing in front of the ATM when a green van pulled up along the west side of the armed vehicle. The messenger saw the driver's side open, along with the rear driver's side sliding door open. A male robber exited the sliding door holding an assault type rifle. The messenger observed another male inside the green van with another assault rifle. The messenger stated the robber who jumped out of the van, began to fire his assault rifle at him. The messenger was shot in the leg and fell to the ground. The messenger removed his firearm and began to return fire at the robbers. The messenger stated the robber who shot him, used the armored vehicle as cover to peek around the vehicle at the messenger. The messenger could not walk, but crawled back to the door to the armored vehicle. The green van fled from the scene. The Loomis employees fled from the bank parking lot in their armored vehicle and activated its alarm system. The Loomis employees drove to the hospital. The Loomis driver was also struck with a bullet from the robber.

5. A Wachovia Bank employee assigned to the drive-thru teller was waiting on a customer when she observed the Loomis armored van pull up to the ATM. The van was parked at the ATM for several minutes. The teller had an intercom system and heard the messenger say, "Get Back!" The teller has heard this statement before by the Loomis employees when they are servicing the ATM and someone begins to approach them. The teller looked up and observed a black male, a skinny build, wearing a long sleeved white T-shirt, dark pants, and a blue baseball cap. The teller described the cap as

sitting very high on the male's head. The teller saw the male carrying a long barreled gun. The teller said the male approached the messenger from the south end of the parking lot. The teller heard gun shots and saw the male begin to fire his gun at the messenger. The messenger fell backward to the ground after being shot. The teller did not see anything more, because she went to get help from other employees.

6. A business owner located on Military Trail in West Palm Beach, Florida contacted the sheriff's office regarding a black male who used the telephone in his business. The owner stated a black male came into the store and asked to use the telephone. The owner heard the male tell the other party on the phone to come and pick him up and that the cops were all over the place. The owner stated the male then left the business.

7. The sheriff's office K-9 unit began a track from that business owner's front door. The K-9 located Corneilus A. Williams, a black male, hiding in some bushes approximately one block from the business.

8. Williams was taken into custody and provided a post-Miranda statement regarding his involvement in the attempted robbery. Williams' statement to your affiant and the detective was recorded. The following information is a summary of that statement. Williams was picked up around 6:30 a.m. on July 30, 2008, by a black male known to him as "Flip." Flip and his brother (later identified as Elliote HANDY) drove a green van that Williams knew was stolen. Williams was told the previous day that Flip and other unknown males attempted to rob an armored car, but were unsuccessful. Flip and HANDY drove Williams to an apartment complex in Riviera Beach. They met

3

up at an apartment with four other black males. Williams knew three of the males as "Bam," "Courtney," and "Jesse." Williams did not know the names of the other black male. Williams knew that the group wanted to rob an armored car. Williams, Flip, HANDY, Bam, and Jesse got into the green Dodge van. The other two whom he did not identify got into a stolen grey Ford F-250 pickup truck which was parked in the parking lot at the apartment complex.

9. They began to drive around Palm Beach County looking for an armored truck to rob. The Ford pickup followed the van. They drove west on Okeechobee Boulevard when Flip saw the Loomis white armored vehicle parked at the ATM in the bank parking lot. Flip made an U-turn and drove into the parking lot of the Wachovia Bank. They pulled up along the side of the white armored van, when Bam opened the driver's side sliding rear door and exited the van. Bam carried an assault type rifle. Jesse had the other assault rifle. Jesse attempted to get out of the van when Bam began to fire at the messenger. Jesse jumped back into the van. Flip drove off around the parking lot of the bank and back onto Okeechobee Boulevard. Flip left Bam in the parking lot. Flip drove to Military Trail and parked the van after Williams and the others asked to be let out. Williams fled from the van and hide in the bushes until the K-9 found him.

10. Williams stated that Flip lived in the apartment complex named Stoneybrook in Riviera Beach, Florida with his girlfriend, Brittany. Sgt. Josh Lewis of the Riviera Beach Police Department located Flip's apartment through the management office.

11. Williams was indicted on August 14, 2008 in the Southern District of Florida

4

regarding the armored robbery. Williams pled guilty in the Southern District of Florida to the indictment on February 12, 2009. Williams provided a factual proffer regarding his participation in the armed robbery and identified his co-defendants as Michael De Angleo Hazel, a black male, year of birth, 1985, Jesse A. Jones, a black male, year of birth, 1988, Elliote HANDY, a black male, year of birth, 1986, Courtney Griffin, a black male, year of birth, 1984, Randy Lee Sampson, a black male, year of birth 1982, and Michael Bowe, a black male, year of birth, 1986.

12. Flip was located in the apartment and was identified as Randy Lee Sampson, a black male, year of birth, 1982. Sampson provided a <u>post-Miranda</u> statement to Sgt. Lewis and the FBI agents. Sampson stated that he participated in the armored car robbery along with Williams, Bowe, Jones, and Hazel. Sampson told Sgt. Lewis that Bam's real name is Michael Bowe. Sampson's statement contradicted Williams' statement regarding who was in which vehicle. Sampson stated he drove the Ford F-250 along with Bowe. Sampson stated Williams, Jones, and Hazel drove in the green van. Sampson at the time failed to implicate HANDY, his brother, in the crime.

13. Sampson was indicted on August 14, 2008 for the armed robbery. Sampson pled guilty in the Southern District of Florida regarding this case on October 30, 2008. Sampson provided a factual proffer correcting his previous statement about the true facts of the case and identifying his co-defendants as, Michael De Angleo Hazel, a black male, Jesse A. Jones, a black male, Elliote Handy, a black male, year of birth, 1986, Courtney Griffin, a black male, Corneilius Williams, a black male, and Michael Bowe, a black male.

14. Courtney Griffin turned himself into the local police station on the day of the

robbery. Griffin provided a <u>post- Miranda</u> statement about his involvement in the armored car robbery. Griffin met up with Williams, Sampson, Handy, Bowe, Hazel, and Jones. Griffin stated they drove around during the morning looking to rob an armored car. Griffin drove the stolen Ford F-250 as the safe car along with Hazel. Sampson drove the green van, along with Bowe, Handy, Williams, and Jones. Griffin did not see the actual robbery since he was parked away from the scene. Griffin did hear the gun shots and fled in the stolen pickup truck.

15. Griffin was indicted in the armored robbery on August 14, 2008. Griffin pled guilty in the Southern District of Florida in the armored robbery on October 30, 2008.

16. Michael Bowe was indicted in the armored robbery on August 14, 2008 in the Southern District of Florida. Bowe pled guilty to the indictment on October 30, 2008. Bowe provided a factual proffer regarding his participation in the armored robbery and identified his co-defendants as Hazel, Jones, HANDY, Sampson, Williams, and Griffin.

17. Bowe said he was in the stolen green van with Sampson, Williams, Jones, and HANDY. Bowe had previously purchased grey and blue work shirts and pants for all the participants. Some of their shirts displayed first names on the chest area, but Bowe's shirt did not have a name on it. Bowe first wore a hairy bearded mask, Sampson wore nothing on his head, Jones first wore a blue scull type hat, HANDY wore one of the president's masks and Williams possibly wore a president's mask during the attempted robbery. Bowe switched his bearded mask with Jones' blue scull hat prior to jumping out of the van to commit the attempted robbery.

6

18. Bowe proffered to the following facts regarding the attempted robbery. Bowe jumped out of the van and began to fired the assault rifle at the messenger, he quickly realized that Sampson began to drive off in the van leaving him alone in the parking lot. Bowe began to run from the bank parking lot. Bowe dropped the blue scull type hat somewhere in his travels from the scene.

19. The Palm Beach County Sheriffs Office crime scene investigators (CSI) processed the crime scenes after the robbery. The CSI collected several articles of clothing from a nearby creek bank that ran behind the bank. In the articles of clothing was the blue scull type hat. The stolen van used during the attempted robbery was also processed by the CSIs. The items located inside or just outside the van included an assault type rifle, various articles of clothing and at least three different types of president's masks or some other type of masks. All the items seized by CSI were turned over to your affiant and submitted to the Federal Bureau of Investigation Laboratory for DNA serology testing.

20. On January 5, 2009, the FBI Laboratory processed the evidence submitted for serology testing. The submitted items will be identified in this affidavit with a letter (Q) and a number assigned by the FBI Laboratory. They concluded that male DNA is present in a blue hat (Q3), a shirt(Q6), and two of the president's masks(Q19) and (Q20). They concluded that a mixture of male and female DNA is present in swabs from the rifle(Q7), another shirt(Q17), and the third mask(Q18).

21. The Laboratory reported that a major contributor can be discerned from the blue hat(Q3). The Laboratory entered into Combined DNA Index System (CODIS) the major contributor from the blue hat (Q3). On November 12,

2009, the Federal Bureau of Investigation Laboratory reported that the results of the search of Combined DNA Index System (CODIS) for the major contributor to the blue hat (Q3) were found to be a match to a convicted offender DNA profile submitted by Florida Department of Law Enforcement. Information provided by the FDLE, for the convicted offender profile is Jesse Jones, year of birth, 1988, FBI# 981730FC4, Florida Department of Corrections # Z07932. The information provided on the CODIS hit by FDLE is the same person that Bowe, Griffin, and Williams identified as the person Jesse Jones that participated in the armored car robbery with them on July 30, 2008.

22. Jesse Jones was indicted in the armored robbery on September 20, 2010 in the Southern District of Florida. Jones plead guilty to the indictment on December 14, 2010.

23. The FBI Laboratory reported that the DNA in the mask (Q20) with male DNA present came from at least two individuals. A major contributor can be discerned from the DNA. Bowe, Sampson, Williams and Griffin are excluded from the major contributor.

24. On February 11, 2011, a search warrant was signed in the Southern District of Florida for buccal mouth swabs from Elliote HANDY, another person that Bowe, Griffin and Williams identified as participating in the armored car robbery with them on July 30, 2008. The purpose of obtaining the buccal swab from HANDY was to compare it to the DNA found in the mask (Q20). On February 15, 2011, HANDY was interviewed at the St. Lucie County Jail and asked to provide the buccal mouth swabs. HANDY cooperated with the agents and made two spontaneous non-Miranda statements to the agents.

The first statement was that he was with "those guys" in the hotel room the night before, but he thought they were going to kill someone not rob an armored car. The second statement was that he tried on a President's mask in the hotel room, but he did not go with them.

25. On April 8, 2011, the FBI Laboratory reported that they have completed their examination of HANDY's buccal mouth swabs with the mask (Q20). They confirmed that the major contributor profile to the DNA obtained in the mask is a match to HANDY's DNA profile.

26. Based on the facts and information set forth in this affidavit, your affiant believes that there is probable cause to arrest Elliote HANDY, a black male, born in 1986, in violations of Title 18, United States Code, Sections 1951(a) and (b)(1), by knowingly and willfully obstructing, delaying and affecting commerce and the movement of articles and commodities in commerce, by attempted robbery and conspiring to do so, and did violate Title 18, United States Code, Section 924(c)(1), by using or carrying a firearm during and in relation to a crime of violence. All these crimes occurred in the Southern District of Florida.

FURTHER YOUR AFFIANT SAYETH NAUGHT

JOHN J. MACVEIGH, IV, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed before me
this _____ day of June 2011.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Elliote Handy

**Case No.:** 11-8226-AEV

**Count #: 1**

**Charge:** Attempted Hobbs Act robbery.

**Statute:** 18 U.S.C. § 1951(a)

**Max. Penalty:** 20 Years' Imprisonment; 3 Years' Supervised Release; $250,000 fine.

**Count #: 2**

**Charge:** Possession of a firearm in furtherance of a crime of violence.

**Statute:** 18 U.S.C. § 924(c)(1)(a)(iii)

**Max. Penalty:** 10 Years' Mandatory Minimum Term of Imprisonment to Life Imprisonment, to be imposed consecutive to any other Term of Imprisonment; 5 Years' Supervised Release; $250,000 fine.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 11-8226-AEV

UNITED STATES OF AMERICA

vs.

ELLIOTE HANDY,

        Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  ____ Yes  _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  ____ Yes  _X_ No

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

BY:  _____
        SHANIEK M. MAYNARD
        ASSISTANT UNITED STATES ATTORNEY
        Florida Bar No. 0522201
        500 S. AUSTRALIAN AVENUE, SUITE 400
        WEST PALM BEACH, FL 33401
        TEL: (561) 820-8711
        FAX: (561) 805-9846